# CHARLES D. WALTON *v.* WASHINGTON COUNTY HOSPITAL ASSOCIATION

[No. 50, April Term, 1940.]

*Decided June 12th, 1940.*

The cause was argued before OFFUTT, PARKE, MIT-CHELL, SHEHAN, JOHNSON, and DELAPLAINE, JJ.

*Charles Z. Heskett,* for the appellant.

*Omer T. Kaylor* and *William A. Gunter,* for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

Charles D. Walton is appealing from a judgment for $5241.66, recovered by the Washington County Hospital Association upon a contract of guaranty.

On October 13th, 1936, the hospital association, holder of a mortgage on properties of the Hagerstown Brewing Company and the Federal Milling Company in the

amount of $20,000, with interest from May 27th, 1934, agreed to release the property of the milling company from the lien of the mortgage in consideration of the agreement of the appellant and his brother, Stanley W. Walton, to be responsible for any loss up to $5000 that might be sustained under the mortgage. It was declared to be the intention of the parties that the mortgagee "shall look to the property" of the brewing company for the payment of the mortgage, and that the guarantors "shall be responsible up to $5000 for whatever part of said mortgage is not collected from the property." The mortgagee agreed to give an extension on the payment of the principal for a period of three years, provided that the interest was paid when due and all other terms of the mortgage were complied with. It was further agreed that, in the event of default, the holder of the mortgage would notify the guarantors of the intention to foreclose at least ten days prior to the institution of foreclosure proceedings, to give them an opportunity to take the mortgage by assignment.

When the brewing company defaulted in the payment of interest and taxes, the mortgagee duly notified the grantors of its intention to foreclose; but, since the guarantors declined to take up the mortgage, the property was offered at public sale by Omer T. Kaylor, assignee, on May 3rd, 1938, and was sold to the mortgagee for $17,000. The appellant and his brother filed exceptions to the sale, but they later abandoned them, and the sale was thereupon ratified by the Circuit Court for Washington County. The auditor, after making allowances for taxes, insurance, commissions, counsel fee and costs, reported a balance of $14,103.37 accruing to the mortgagee.

Inasmuch as a deficiency of $7709.97 remained on the mortgage debt, the mortgagee made demand upon the guarantors for the payment of $5000; and upon their failure to settle, the mortgagee entered suit against them. Stanley W. Walton was returned *non est*. The appellant filed a plea maintaining that the property had a market

value far in excess of the principal amount of the mortgage, and the mortgagee, having purchased it, had not sustained any loss. He argued that he could not be held liable under the guaranty until the mortgagee had resold the property in order to establish an actual loss. The association demurred to the plea, and the demurrer was sustained by the court.

A contract of guaranty is a form of commercial obligation, which should be construed in furtherance of its spirit, without strict technical nicety, to promote liberally the use and convenience of commercial intercourse. The words of a guaranty should receive a fair and reasonable interpretation to effectuate the intention of the parties, and the circumstances accompanying the transaction may be considered in seeking the intention of the parties. The court should give the instrument that construction which will best accord with the intention, as manifested by the language in the light of all the surrounding circumstances, without stretching the words beyond their import in favor of the creditor or restricting them in aid of the guarantor. *Hooper v. Hooper,* 81 Md. 155, 169, 31 A. 508; *Saunders Co. v. Ducker,* 116 Md. 474, 479, 82 A. 154; *Penrose v. Page,* 145 Md. 14, 20, 125 A. 553; 24 *Am. Jur., Guaranty,* sec. 56. In the present case the parties considered the eventuality of foreclosure; it is, therefore, logical to presume that they intended to allow the result of foreclosure to determine the amount of liability. Under the provisions of a Maryland statute, no title derived through foreclosure of mortgaged property, after confirmation of the sale by the court, shall be "questioned, impeached or defeated, either at law or in equity" on the ground that the property was bought in by the mortgagee, his assignee, or legal representatives, or for his benefit or account. Code, art. 66, sec. 14. When mortgagees avail themselves of the privilege of being the purchasers of mortgaged property, they are required to act with strict impartiality at the sale, and there is greater reason for diligence to obtain the best price obtainable, while the court should

exercise a greater degree of caution in passing upon the ratification of the sale. The measure of liability of a guarantor of a mortgage is established after the amount of the deficiency is determined by the foreclosure; and it has been held that although the mortgagee purchases the mortgaged property, the indemnity contemplated by the guarantor is ordinarily the deficiency determined by the auditor's report, and the indemnity is not to be limited to the mortgagee's ultimate loss. *Mayers v. Krawshaar*, 166 Md. 169, 174, 170 A. 752; *Pennsylvania Avenue Assn. v. Fedder*, 175 Md. 127, 199 A. 785.

It is also well established that since the confirmation of a foreclosure sale is the final determination by the court that the mortgaged property was sold at a fair price, the defense of inadequacy of price can not be raised in subsequent proceedings, and for the purpose of a deficiency decree the price obtained at the sale is conclusive on the question of the market value of the property. *Jacksonville Loan & Insurance Co. v. National Mercantile Co.*, 77 Fla. 825, 82 So. 292. It has also been decided that where mortgaged property is bought at the foreclosure sale by the mortgagee, in the absence of fraud, the decree of ratification is *res judicata* as against an obligor on the bond which secured the mortgage, on the question of the amount of deficiency, even though the selling price was grossly inadequate. *Broadman v. Colonial Building-Loan Assn.*, 118, N. J. Eq. 275, 178 A. 775. The same principle should apply to the case of a contract of guaranty in this state, unless for such extraordinary reasons of fraud, accident, or mistake as would justify the relief of a court of equity. The mere fact that no other bidder was willing to offer a higher bid for the brewery property is no reason to subject the hospital association to additional trouble and expense. Indeed, it frequently happens that a mortgagee reluctantly purchases mortgaged property at his own sale in order to extricate himself from a situation which threatens continual loss, thereby taking the chance of holding it for an indefinite period with the possibility

of sustaining a loss on resale. The hospital association had the right under the law to purchase the property at the assignee's sale; and the records of the court indicate that it sustained a loss of $7709.97.

At the conclusion of the testimony, the appellant offered a prayer to instruct the court, sitting as a jury, that he had guaranteed "not more than $5000 of the principal amount of the mortgage"; that the terms of the contract cannot be extended by implication beyond the strict letter thereof; and that the liability could in no event be more than $3000, the difference between $20,000, the original amount of the mortgage, and $17,-000, the amount of sale. He urged that, although the agreement stipulated that he and his brother had guaranteed to indemnify the mortgagee against "any loss up to $5000 sustained * * * under the said mortgage," one of the premises recited that they had agreed to guarantee "the payment of $5000 of the principal of said mortgage." It is a cardinal rule of construction that the intention of the parties to a contract must prevail, unless inconsistent with some rule of law, and this intention must be gathered from the terms of the contract considered as a whole, and not from the clauses considered separately. *McGaw v. Hanway,* 120 Md. 197, 87 A. 666. But where one part of a contract of guaranty consists of a recital of premises, while another part contains the actual obligations to be performed, an incidental recital is not controlling over the direct provisions of the obligatory part. *Moore v. Baasch,* 109 Wash. 568, 187 P. 388. In urging that no taxes, insurance, commissions, counsel fee, costs or interest should be included in computing the deficiency the appellant relied upon the decision in *Continental Supply Co. v. Tucker-Rose Oil Co.,* 146 La. 671, 83 So. 892. But the facts in that case were quite different from the facts before us. In that case the contract of guaranty covered a portion of the cost of goods, which had been bought by a corporation; and it was decided by the court that the guaranty did not include the interest on de-

ferred payments and the attorney's fee allowed by a promissory note, which had been signed by the corporation but not by the guarantors. In the case of a mortgage, however, the taxes, insurance, commissions, counsel fee, costs, and interest must be considered in determining the amount of the deficiency.

The court ruled correctly on both the demurrer and the prayer at the trial of this case. Moreover the allowance of interest was fair and proper, even though its effect was to increase the judgment beyond the limit of liability specified in the agreement. When an obligation becomes due under a guaranty, interest is recoverable against the guarantor from the time of notice and demand. The sum of $5000 guaranteed by the appellant was due and payable when it was demanded, and interest began to run at that time. *Manry v. Waxelbaum Co.*, 108 Ga. 14, 33 S. E. 701; *Johnson v. Charles D. Norton Co.*, 159 Fed. 361. The judgment for the appellee should, therefore, be affirmed.

*Judgment affirmed, with costs.*